SHORTESS, Judge,
dissenting.
These proceedings stem from a Civil Service Commission decision dismissing three separate appeals on the grounds that Civil *1105 Service Rule 13.34 provides no jurisdiction for it to hear appeals contesting the adoption of, inter alia, a pay plan or any rule, or any amendment thereof. The Commission decision reads, in part:
Appellants do not contend that if a particular pay rule were interpreted differently, the result would have been different. Appellants basically contend that the rules governing the implementation of the pay plan do not insure (sic) that an employee’s individual pay rate reflects his seniority and therefore, violate the Civil Service Article.
The three petitions of appeal, on the other hand, each assert that plaintiffs “are satisfied with the classifications and pay afforded their positions under the ... Pay Plan ... [but] are aggrieved by the method in which the Plan was implemented.”
One plaintiff, Charles Adcox,[1] complains that he maintained the same position, District Engineer Supervisor I, earning $3,134.00 monthly both before and after implementation of the Pay Plan, but that post-adoption promotions by others to the position earn between $3,424.00 to $3,634.00 notwithstanding less years of service in the position. The other claims are similar.
The majority reasons that these claims are analogous to those in Hollingsworth, where the operation of step increases within a grade prior to promotion to the next grade resulted in a disparity among various members of the same level occupying the same position. We concluded in Hollings-worth essentially that the step increases were part and parcel of the whole system, and that any disparity resulting from these within-grade adjustments prior to a promotion resulted simply from the “mechanics of the system.” Hollingsworth, 354 So.2d at 1059-60. In Hollingsworth the disparity resulted solely from the operation of the Pay Plan. Where the disparity results from the exercise of discretion, i.e., implementation of the Pay Plan, the result is different. See, e.g,, Gandy v. Civil Service Commission, 498 So.2d 765 (La.App. 1st Cir.1986) (wherein acts or directives of the Commission and/or Director which function to implement the Pay Plan are not barred by Rule 13.34 but rather are appeal-able under Rule 13.10(e)).
“Pay Plan” is defined in the Civil Service Rules as simply “the schedule of pay rates or ranges and a list showing the assignment of each job in the job evaluation plan.” Rule 1.24. The Pay Plan is prepared by the Director, submitted to the Commission for approval, and then submitted to the governor for his signature. Rules 6.2 and 6.3. The Commission, upon adoption, is charged with the manner of implementation. Rule 6.3(b) (the Commission “upon adoption of a Pay Plan, shall specify the manner in which the Pay Plan is to be implemented”). The Pay Plan adopted in 1987 eliminated the concept of “steps” within grades. See generally Louisiana State Personnel Manual, Uniform Pay Plan. Also, the 63-grade General Schedule and 27-grade Wage Grade Schedule was transformed into the existing 32 General Schedule levels. Id. at Part 6.1. Step increases were replaced with 4% annual merit increases. Id. Each level has a pay range with a range minimum and maximum. Id. The Commission, in implementing the Plan, has some discretion in assigning rates within the range. See Id. at Part 6.6.
The Commission to implement the Pay Plan adopted interim rules for the purpose of “effecting the transition from old class titles to new job titles,” Rule 18.1, and “effecting transition from the old Wage Grade (WG) and Grade Scale (GS) pay structure to a new pay structure,” Rule 19.1. The problem that has emerged is: The Commission is barred by Rule 13.34 from hearing an appeal contesting the constitutionality of the adoption of a pay plan or a rule, but under Thoreson v. Department of Civil Service, 433 So.2d 184 (La.App. 1st Cir.1983) (Thoreson II) and the express language of Rule 13.10(e), appel *1106 late jurisdiction does exist to hear an appeal alleging discrimination in the application of the Pay Plan. Application and implementation are essentially the same thing. The Commission has attempted to implement the Pay Plan through rules. Rule 13.10(e) and Rule 13.34 are thus entirely at odds.
In Thoreson II, the rule at issue was not alleged to be facially unconstitutional, rather the exercise of discretion in implementing the plan was the source of the problem. The same can be said of Gandy inasmuch as the exercise of discretion in interpreting a particular rule was alleged to be discriminatory. Here, the Commission has attempted to transform its duty to exercise its discretion as a quasi-executive entity into a set of rules. The problem derives from the fact that rules do not enforce themselves. The transition rules implicitly recognize this and grant discretion to the Director to waive any rule “to resolve problems which arise as a result of transition to the new pay system ... and approve personnel actions when he determines such approval to be in the best interest of the State Service.” The Commission, however, is under a constitutional mandate to “establish and implement a uniform classification and pay plan.” Thoreson, 433 So.2d at 202; LSA-Const.Art. 10, § 10. In Thore-son, we held that this mandate could not be shirked by “submission to Governor’s orders which are not in keeping with said mandate.” Id. Whether the discretion to implement the Pay Plan is shifted to the Director or remains with the Commission is of no moment because it is the ultimate responsibility of the Commission to fulfill its constitutional mandate. Whether the complaint is that the Director has acted or failed to act, or that the Commission has acted or failed to act, the crucial question is whether the action or inaction is within the sphere of discretion which arises from the duty to implement the Pay Plan.
Plaintiffs at bar complain not that the range of pay or the grade assigned their respective positions is facially discriminatory, but that the pay afforded them within that range, compared to the pay of others with less experience but who were promoted to the same position under the present Pay Plan, is less. In Hollingsworth the disparity resulted from a merit factor, i.e., step increases prior to promotion, without implicating the exercise of discretion. Here the disparity results not from a merit factor but, fortuitously, from the date of promotion, and, more importantly, the rules discussed above appear to place resolution of the problem within the sphere of discretion arising from the duty to implement the Pay Plan. Hollingsworth is therefore in-apposite.
In Gandy we observed the particular expertise of the Commission in addressing matters such as these before us because it is more familiar with a system of job classification based in large part upon merit. Gandy, 498 So.2d at 769. In addition, we stated that appeals to the Commission should be denied “only for the most compelling reasons.” Id. (quoting Smith v. Board of Commissioners of Port of New Orleans, 262 La. 96, 262 So.2d 383, 384 (1972)).
In my opinion, the Commission is vested with subject matter jurisdiction, so I respectfully dissent.

. The numerous DOTD employees joining the appeal are listed separately on Exhibit A which is attached to the petition for appeal.